IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

MABINI C. VICENTE,                          )
                                            )
                    Plaintiff,              )       Civil Case No. 08-282-KI
                                            )
        vs.                                 )       OPINION AND ORDER
                                            )
COMMISSIONER of Social Security,            )
                                            )
                    Defendant.              )
_____ )

        Martin R. Cohen
        P. O. Box 1229
        4040 Douglas Way
        Lake Oswego, Oregon  97035

        Linda S. Ziskin
        P. O. Box 2237
        Lake Oswego, Oregon  97035

                Attorneys for Plaintiff

        Kent S. Robinson
        Acting United States Attorney
        District of Oregon

Page 1 - OPINION AND ORDER

Adrian Brown
Assistant United States Attorney
1000 SW Third Avenue, Suite 600
Portland, Oregon  97204-2902

David Morado
Regional Chief Counsel
L. Jamala Edwards
Special Assistant United States Attorney
Social Security Administration
Office of the General Counsel
701 5th Avenue, Suite 2900 M/S 901
Seattle, Washington  98104-7075

       Attorneys for Defendant

KING, Judge:

Plaintiff Mabini Vicente brings this action pursuant to section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner denying plaintiff's application for supplemental security income benefits ("SSI"). I affirm the decision of the Commissioner.

## BACKGROUND

Plaintiff filed an application for SSI on September 9, 2004.  The application was denied initially and upon reconsideration.  After a timely request for a hearing, plaintiff, represented by counsel, appeared and testified before an Administrative Law Judge ("ALJ") on July 16, 2007.

On September 17, 2007, the ALJ issued a decision finding that plaintiff was not disabled within the meaning of the Act and therefore not entitled to benefits.  This decision became the final decision of the Commissioner when the Appeals Council declined to review the decision of the ALJ on February 13, 2008.

## DISABILITY ANALYSIS

The Social Security Act (the "Act") provides for payment of disability insurance benefits to people who have contributed to the Social Security program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1). In addition, under the Act, supplemental security income benefits may be available to individuals who are age 65 or over, blind, or disabled, but who do not have insured status under the Act. 42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to cause death or to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for either DIB or SSI due to disability. The claimant has the burden of proof on the first four steps. Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007), cert. denied, 128 S. Ct. 1068 (2008); 20 C.F.R. §§ 404.1520 and 416.920. First, the Commissioner determines whether the claimant is engaged in "substantial gainful activity." If the claimant is engaged in such activity, disability benefits are denied. Otherwise, the Commissioner proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. A severe impairment is one "which significantly limits [the

claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c) and 416.920(c). If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the Commissioner proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d) and 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is presumed to be disabling, the Commissioner proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past. If the claimant is able to perform work which he or she performed in the past, a finding of "not disabled" is made and disability benefits are denied. 20 C.F.R. §§ 404.1520(e) and 416.920(e).

If the claimant is unable to perform work performed in the past, the Commissioner proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his or her age, education, and work experience. The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities. Parra, 481 F.3d at 746. The claimant is entitled to disability benefits only if he is not able to perform other work. 20 C.F.R. §§ 404.1520(f) and 416.920(f).

## STANDARD OF REVIEW

The court must affirm a denial of benefits if the denial is supported by substantial evidence and is based on correct legal standards. Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1

(9th Cir. 2005).  Substantial evidence is more than a "mere scintilla" of the evidence but less than

a preponderance.  Id.  "[T]he commissioner's findings are upheld if supported by inferences

reasonably drawn from the record, and if evidence exists to support more than one rational

interpretation, we must defer to the Commissioner's decision."  Batson v. Barnhart, 359 F.3d

1190, 1193 (9th Cir. 2003) (internal citations omitted).

## THE ALJ'S DECISION

The ALJ determined that Vicente suffered from chronic back pain, diabetes mellitus with

neuropathy, and a learning disorder.  However, the ALJ did not find that these impairments met

or medically equaled the requirements of any of the impairments listed in Appendix 1, Subpart P

of part 404 of the Social Security Regulations.

The ALJ concluded that Vicente has the residual functional capacity to lift or carry 20

pounds occasionally and 10 pounds frequently.  He can sit, stand or walk for 15 minutes at a time

before needing to change position, but has no limitation in the total amount of time he can sit,

stand or walk.  He can only occasionally climb, balance, stoop, kneel, crouch or crawl.  He has

very limited writing skills, and is limited to simple, routine, and repetitive work.  He can only

occasionally interact with co-workers or the public.

The ALJ determined that Vicente could not perform his past relevant work as a temporary

laborer, janitor, film developer, or machine shop helper.  He could, however, perform work as a

small products assembler, electronics worker, or fishing rod assembler.

**FACTS**

Vicente, born on June 28, 1962, alleges disability beginning August 1, 2001, due to Type II diabetes, degenerative disc disease, and mental impairments. He was 39 years old at the time of his alleged onset date of disability.

Vicente completed the eighth grade and never successfully obtained his GED. He exhibited behavioral problems as a child and was discharged from the Army Reserves in 1984 because he was "unmotivated, undisciplined, and ha[d] little or no potential for continued service." Tr. 66. In the discharge notice he was described as "resentful to authority" and a "detrement [sic] to the morale and discipline of [his] squad and platoon." Id.

Vicente has had diabetes since 1995, which is not well-controlled. He has experienced numbness in his legs and feet.

Vicente had surgery on his lumbar spine in 2001, and his surgeon restricted him from carrying anything over 25 pounds, from repeated bending, lifting, or stooping, and from sitting or standing for more than two hours at a time.

In 2003, Vicente, who is 5'6" tall, weighed 231 pounds.

At the request of Vicente's endocrinologist, in 2002 Norvin Cooley, Ph.D., evaluated Vicente for anger management problems. Dr. Cooley did not think anger management treatment was necessary, but did diagnose Vicente with pain disorder, learning disorder, and personality disorder "not otherwise specified with a [sic] narcissistic and obsessive compulsive traits." Tr. 164. Vicente tested at the fourth grade level in reading and at the second grade level in spelling. Dr. Cooley also noted that Vicente does not have "a clear understanding of how his behavior

impacts others.  It is clear that his behavior has impacted relationships throughout his life," and

he noted that Vicente "maintains significant interpersonal distance."  Id.

    In 2004, Marcia L. Hays, M.D., evaluated Vicente and opined that his antisocial traits

"seem to stem from a more 'neurotic' or a defensive posture than is usually seen with an

Antisocial Personality Disorder characterological structure.  In reviewing his history, he seems to

need to put people at a distance and he often uses his isolation, anger, blaming or swearing to do

so."  Tr. 228.  She diagnosed him with alcohol dependence in remission and a learning disorder.

    Luke Patrick, Ph.D. evaluated Vicente at the request of the State of Oregon Disability

Determination Services in 2005.  He concluded Vicente "has a longstanding history of

oppositional and generally maladaptive personality characteristics," "has extreme difficulty

dealing with the general public, particularly individuals in authority," his "ability to engage in

appropriate social interaction is extremely limited by his maladaptive personality characteristics,"

and he diagnosed Vicente with "Personality Disorder not otherwise specified with strong Cluster

A personality traits."  Tr. 264.

     Vicente testified that he lives with his 17-year old daughter, who helps with the

household chores.  About three times a week he spends two to four hours at a friend's shop,

sweeping, talking, eating lunch and listening to the radio.  He spends the rest of the day playing

computer games, watching television, and doing some chores around the house.  He eats dinner

with his daughter in the evening and makes sure she does her homework.  Plaintiff testified that

he has had conflicts with coworkers and supervisors in previous employment.  He testified that

he has used profanity after losing his temper with supervisors.

### DISCUSSION

Vicente argues that the ALJ erred in the following ways.  First, Vicente contends he suffers from a pain disorder and personality disorder that constitute severe impairments and that the ALJ failed to evaluate the severity of his disorders by utilizing the PTRF.  Relatedly, Vicente argues that the ALJ's failure to consider these disorders at step 2 makes the ALJ's step 3 analysis incomplete.  He contends that the ALJ was required to consider his mental disorders, in combination with his physical limitations, in evaluating equivalence with any of the listings.  Second, Vicente contends the ALJ failed to ask the VE whether her testimony was consistent with the Dictionary of Occupational Titles.  Third, he argues correct application of the Medical Vocational Guidelines demonstrate he is disabled.  Finally, he challenges the ALJ's analysis of the lay witness testimony.

I.      Severity of Vicente's Personality and Pain Disorders

Vicente argues that the ALJ erred in failing to assess the severity of Vicente's personality and pain disorders and that the ALJ failed to complete the Psychological Review Technique Form ("PRTF") at each level in the administrative review process pursuant to 20 C.F.R. § 416.920a.

ALJs complete the PRTF at step two and three of the evaluation to determine if the claimant has severe mental impairments which meet or equal one of the listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.  See 20 C.F.R. § 416.920a(c).  The PRTF's categories are considered broader than the "detailed assessment" required in the residual functional capacity finding and vocational hypothetical, in steps four and five.

Page 8 - OPINION AND ORDER

> The psychiatric review technique described in 20 CFR 404.1520a and 416.920a
> and summarized on the Psychiatric Review Technique Form (PRTF) requires
> adjudicators to assess an individual's limitations and restrictions from a mental
> impairment(s) in categories identified in the "paragraph B" and "paragraph C"
> criteria of the adult mental disorders listings. The adjudicator must remember that
> the limitations identified in the "paragraph B" and "paragraph C" criteria are not
> an RFC assessment but are used to rate the severity of mental impairment(s) at
> steps 2 and 3 of the sequential evaluation process. The mental RFC assessment
> used at steps 4 and 5 of the sequential evaluation process requires a more detailed
> assessment by itemizing various functions contained in the broad categories found
> in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing
> of Impairments, and summarized on the PRTF.

SSR 96-8p.

As an initial matter, although the ALJ placed in bold his finding that Vicente suffered

from the severe impairment of "learning disability," his analysis makes it clear he considered all

of Vicente's "mental impairments." Tr. 15. The ALJ mentioned Vicente's childhood behavioral

difficulties, his release from the National Guard, and discussed at length the findings of Drs.

Cooley, Hays, and Patrick. Vicente does not challenge the ALJ's discussion of any of these

examining providers.

In the ALJ's analysis of Vicente's impairments under the Listing of Impairments, the ALJ

performed the PRTF. At the end of his analysis, the ALJ explained that the limitations he

discussed "are used to identify the severity of the mental impairments at steps 2 and 3 of the

sequential evaluation process." Tr. 18. Applying the "paragraph B" criteria, the ALJ concluded

that Vicente has a mild restriction in activities of daily living, moderate difficulties in social

functioning, moderate difficulties in concentration, persistence or pace, and no episodes of

decompensation. Since Vicente showed no "marked" problem in any of these areas, he did not

meet or medically equal the criteria of Listing 12.02.

Page 9 - OPINION AND ORDER

I do not accept Vicente's argument that the ALJ erred in combining steps 2 and 3 in performing the PRTF. Performing the PRTF twice–once under step 2 and once again under step 3–would not have changed the outcome.

It appears Vicente's concern is that, "If ever there was a case demonstrating what a 'Marked' impairment in social functioning looks like, this would be the one." Pl's. Opening Br. at 16. Vicente points to no evidence in the record to substantiate this assertion, however. Dr. Cooley assessed a global assessment of functioning (GAF) score at 55, representing moderate difficulty in social, occupational, or school functioning. See Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000) (DSM-IV). Dr. Hays assigned a GAF score of 60, indicated moderate difficulty in social, occupational, or school functioning. Id.

As for Vicente's argument that the ALJ failed to consider his mental and physical impairments together in concluding Vicente did not meet or equal any of the Listings, Vicente provides no coherent argument as to how his impairments equal any of the Listings.

The listings set out at 20 CFR pt. 404, Subpart. P, App. 1 are "descriptions of various physical and mental illnesses and abnormalities, most of which are categorized by the body system they affect." Sullivan v. Zebley, 493 U.S. 521, 529-30 (1990). For a claimant to show that her impairment matches one of those listed, the impairment must meet all of the specified medical criteria. Id. at 530. Alternatively, a claimant may show that her unlisted impairment is "equivalent" to a listed impairment, but to do so she must present medical findings equal in severity to all the criteria for the one most similar listed impairment. Id. at 531. Equivalence is determined on the basis of a comparison between the "symptoms, signs and laboratory findings"

about the claimant's impairment as evidenced by the medical records "with the medical criteria

shown with the listed impairment."  20 C.F.R. § 404.1526.  If a claimant's impairment matches

or is equivalent to a listed impairment, he is presumed unable to work and is awarded benefits

without a determination whether he can actually perform prior work or other work.  Sullivan, 493

U.S. at 532.

Vicente bears the burden of proving that he has an impairment that meets or equals the

criteria of an impairment listed in Appendix 1, subpart P of part 404 of the Commissioner's

regulations.  Burch v. Barnhart, 400 F.3d 676, 683 (9th Cir. 2005).  He has not done that.

In short, the ALJ did not err in analyzing Vicente's mental impairments.

II.    Consistency with the Dictionary of Occupational Titles

Vicente argues that the ALJ failed to comply with Social Security Ruling 00-4p because

the ALJ failed to question the VE about whether her testimony conflicted in any way with the

Dictionary of Occupational Titles.

SSR 00-4p provides:

Occupational evidence provided by a VE or VS generally should be
consistent with the occupational information supplied by the DOT.  When there is
an apparent unresolved conflict between VE or VS evidence and the DOT, the
adjudicator must elicit a reasonable explanation for the conflict before relying on
the VE or VS evidence to support a determination or decision about whether the
claimant is disabled.  At the hearings level, as part of the adjudicator's duty to
fully develop the record, the adjudicator will inquire, on the record, as to whether
or not there is such consistency.

The ruling further explains that the Commissioner relies "primarily on the DOT . . . for

information about the requirements of work in the national economy."  SSR 00-4p.

Plaintiff relies on <u>Massachi v. Astrue</u> in which the court concluded that an ALJ may not "rely on a vocational expert's testimony regarding the requirements of a particular job without first inquiring whether the testimony conflicts with the *Dictionary of Occupational Titles*." 486 F.3d 1149, 1152 (9th Cir. 2007). In that case, there was an "apparent conflict" between the DOT and the VE's testimony about whether the claimant was "qualified for certain jobs." <u>Id.</u> at 1152 nn.18,19.

Plaintiff does not argue that the VE identified jobs with *skill requirements* contradicting the DOT. Instead, plaintiff contends that the VE's estimate as to the number of jobs in the national and regional economy was vague as she could not specify the number of jobs that would allow frequent position changes. Plaintiff has not identified any conflict with the DOT. The ALJ is simply required to determine whether work "exists in significant numbers either in the region where you live or in several other regions of the country." 20 C.F.R. § 416.966(a). In doing so, the ALJ is entitled to consider the DOT, among other publications, and to rely on the testimony of a VE. 20 C.F.R. § 416.966(d). The VE testified that the number of jobs allowing a sit/stand option was "large" and "high" based on her "experience in calling and doing labor market research and visiting manufacturing plants[.]" Tr. 401.

Substantial evidence supported the ALJ's conclusion that significant numbers of jobs existed in the national economy that a claimant with Vicente's RFC could perform. Furthermore, any error the ALJ made in failing to ask the VE whether her testimony conflicted with the DOT is harmless because plaintiff points to no apparent conflict between the DOT and the VE's testimony.

III.   <u>Lay Witness Testimony</u>

Vicente argues that the ALJ improperly rejected the testimony of Bietschek, Vicente's employment and training specialist.

Lay testimony about a claimant's symptoms is competent evidence which the ALJ must take into account unless he gives reasons for the rejection that are germane to each witness.  A medical diagnosis, however, is beyond the competence of lay witnesses.  <u>Nguyen v. Chater</u>, 100 F.3d 1462, 1467 (9th Cir. 1996).  A legitimate reason to discount lay testimony is that it conflicts with medical evidence.  <u>Lewis v. Apfel</u>, 236 F.3d 503, 511 (9th Cir. 2001).

Bietschek wrote that Vicente has problems working with others.  Vicente participated in a work training program, but Bietschek reported that Vicente was unwilling to meet with coworkers to resolve issues and that "[m]anagement feels that due to the way [Vicente] avoids interpersonal relationships once problems become identified makes it highly unlikely that he will keep gainful employment."  Tr. 153.  Bietschek opined that it was his "professional belief that Mr. Vicente (whom I have known for the past 4 years) will continue to have employability barriers that will keep him from getting and keeping gainful employment."  <u>Id.</u>

The ALJ did not give full weight to Bietschek's opinion because the "inability [to learn to resolve interpersonal conflicts] does not generalize to inability to perform all work activity.  There is no credible evidence that the claimant would be unable to perform simple, routine, repetitive work involving only occasional interaction with co-worker[s] and members of the public."  Tr. 23.

The ALJ gave a reason to disregard the testimony of this witness, which was supported by substantial evidence in the record. Vicente's RFC limits him to only occasional interaction with co-workers and members of the public so as to avoid the problem Bietschek noted.

IV.    Reading Limitation

Vicente argues that the RFC did not account for his reading deficit and that the VE had no opportunity to testify as to whether the jobs required an ability to read. For example, according to Vicente, an inability to read may affect the method of training a worker. In any event, he contends he should be deemed "disabled" pursuant to the Medical Vocational Guidelines. Under Guideline 201.17, a younger individual in the age group of 45 to 49 who is "illiterate or unable to communicate in English" is considered disabled. 20 C.F.R. § 404, Subpart P, Appendix 2.

The Medical Vocational Guidelines, also known as "the grids" are used to determine if substantial gainful work exists for claimants with substantially uniform levels of impairment. When the grids do not adequately take into account a claimant's abilities and limitations, however, they may be used only as a framework and a vocational expert must be consulted. Thomas v. Barnhart, 278 F.3d 947, 960 (9th Cir. 2002).

As an initial matter, the VE testified that the three jobs she identified would not be eliminated if instructions needed to be given orally, as opposed to in writing. Tr. 402. Furthermore, as the Commissioner points out, Vicente's reading difficulties do not rise to the level of "illiterate."[1] Vicente can read at the fourth grade level and, although he admitted he has trouble reading, he testified that he could read the notices he received from the Social Security

---

[1]"Unable to read or write." Merriam Webster's Collegiate Dictionary 577 (10th ed. 1996).

Administration.  He has second grade level spelling, but the ALJ accounted for this limitation in formulating Vicente's RFC; Vicente was deemed to have "very limited writing skills" and was limited to "simple, routine, repetitive work."  Tr. 18.  Vicente is not illiterate.

In sum, the ALJ neither erred in formulating Vicente's RFC, accepting the testimony of the VE, or in declining to apply the Medical Vocational Guidelines.

## CONCLUSION

The findings of the Commissioner are based upon substantial evidence in the record and the correct legal standards, and therefore the court affirms the decision of the Commissioner.

IT IS SO ORDERED

Dated this _____24th_____ day of August, 2009.


_/s/ Garr M. King_____
Garr M. King
United States District Judge